[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
REPORT OF TRIAL REFEREE
1. During the spring of 1988 and at all times relevant to this case, the plaintiff, Electronautical Equipment, Inc., was and has been a Connecticut corporation having an office and principal place of business in Waterford, Connecticut.
2. At all times herein relevant, Ludwig Rubinsky was the President and an agent for the plaintiff corporation and acted within the scope of his authority.
3. The plaintiff was and has been in the business of selling, servicing and installing marine electronic equipment.
4. The defendant, David Wordell, has known Ludwig Rubinsky for a long period of time. CT Page 2025
5. In early 1988 Wordell informed Rubinsky that he was purchasing a sailboat and was interested in equipping the vessel with certain marine electronic equipment.
6. In the spring of 1988 the plaintiff, by and through its agent, Rubinsky, entered into an oral agreement with Wordell to install on this sailboat four (4) pieces of marine electronic equipment, namely, an I-Comm VHF radio telephone, a Loran C navigator, a Datamarine Link 5100 and a Genetron video depth sounder.
7. The agreed upon price for this equipment was eight thousand two hundred ($8,200.00) dollars, less tax.
8. The cost of a standard installation was included in the agreed upon price of eight thousand two hundred ($8,200.00) dollars.
9. The cost of that installation was calculated by Rubinsky at fifteen percent (15%) of the price of the equipment.
10. Thus, for purposes of figuring the sales tax on the equipment, Rubinsky discounted the equipment by the fifteen percent (15%) allowed for the standard installation.
11. Rubinsky estimated that at least two weeks would be required to install the equipment Wordell was purchasing from the plaintiff.
12. Wordell informed Rubinsky that the sailboat would arrive at Saybrook Marina on May 20, 1988; however, the boat did not arrive until June 21, 1988.
13. The boat, when seen by Rubinsky, was bigger than he had anticipated.
14. It had been trucked in on a flat bed with the masts in crates.
15. The masts needed to be worked on, which had not been anticipated by Rubinsky when he calculated the price of the equipment and its installation.
16. The installation work commenced on July 4, 1988 and was completed August 1, 1988.
17. Actual days worked on this project were as follows: July 4, 7, 10, 12, 13, 14, 15, 29 and August 1, 1988.
18. Although the installation spanned almost one month, the actual days worked were nine in number and the man hours involved were eighty two and one quarter (82 1/4).
19. During the course of the installation of this equipment, the plaintiff also installed additional equipment at Wordell's request and CT Page 2026 supplied by him, namely, a masthead light, two spreader lights and a television system.
20. While installing this additional equipment, the plaintiff's employees discovered a wiring problem which required them to remove the old wiring and replace it with new in order to prevent a dead short.
21. This work was authorized by the defendant.
22. There were certain special items requested by Wordell that either upgraded the equipment he purchased or modified it.
23. These special items were as follows: a stainless steel guard and a mounting bracket for the Link system, a stainless steel rail mount, an 840X Gimble Mount and an extra mounting yoke for the Loran C.
24. There were certain other items ordered by Wordell to be installed with his television, namely, an RCA antenna and a stainless steel mount for the same.
25. The installation of the television system, the additional mounts and the rewiring all necessitated cable, wire, etc.
26. The cost of the extra materials used in connection with the changes or modifications as requested by the defendant were as follows:
 a) 840X Gimble Mount $ 155.00 b) Extra mount yokes (@ $50.00 each) 100.00 c) Stainless steel rail mount 55.95 d) Loran stainless steel rail mount 55.95 e) RCA t.v. antenna 158.00 f) Stainless steel mount for t.v. antenna 30.00 g) Edson instrument guard 168.50 h) Bulkhead mount for Link system 45.00 i) Cable, wiring 220.00 -------- TOTAL: $ 988.40
(Reference plaintiff's Exhibit D and Ludwig Rubinsky's testimony that the last seven (7) items on the first page of that exhibit were not part of a standard installation nor were the Gimble Mount and extra yokes).
27. Sales tax on all the equipment purchased amounts to $596.88 and was calculated as follows:
 a) original equipment including material used $ 8,200.00 in a standard installation less fifteen percent (15%) discount attributable to labor -1,230.00 taxable balance ------------ $ 6,970.00 CT Page 2027 sales tax at seven and one half percent (7 1/2%) $ 522.75 b) additional equipment and material used $ 988.40 sales tax at seven and one half percent (7 1/2%) 74.13 c) total sales tax $522.75 74.13 ------- $596.88 28. Certain articles had been sent by Federal Express to the defendant in Florida and a charge of $41.40 incurred as a result.
29. The total cost of the equipment extras, sales tax and delivery charges equals $9,826.68.
30. The defendant paid to the plaintiff a total of $8,200.00.
31. There is due and owing the plaintiff the sum of $1,626.68.
32. The plaintiff billed the defendant and on its monthly statements there was an indication that there was a finance charge of one and one half percent (1 1/2%) per month for overdue balances.
CONCLUSIONS
1. The parties entered into an oral agreement whereby certain items of marine electronic equipment were to be installed on the defendant's sailboat.
2. The agreed upon price was $8,200.00 which included the cost of labor and material essential to a standard installation, less sales tax.
3. During the course of the standard installation, certain other items were installed at the request of the defendant, but there was no evidence as to the amount of time spent on this unanticipated labor.
4. The extra materials used as well as the equipment modifications total $988.40.
5. Pursuant to Section 12-408 (2) of the General Statutes, reimbursement for the sales tax imposed shall be collected by the retailer from the consumer and paid by the consumer to the retailer. Such tax is a debt from the consumer to the retailer when added to the sales price and recoverable at law. Thus, the tax of $596.88 is due from the defendant.
6. The defendant agreed that he owed $41.40 for the delivery charges.
7. In the absence of an express or implied agreement to pay interest, none can be collected. Ruscito v. F-Dyne Electronics Co., 177 Conn. 149,163 (1979). Thus, the plaintiff's finance charges are disallowed as no evidence was adduced relative to an express or implied agreement to pay CT Page 2028 the same.
8. The defendant's claim for dockage fees is disallowed since no bill was produced to substantiate that claim.
9. The plaintiff is entitled to recover from the defendant the sum of $1,626.68.
RECOMMENDATIONS
1. Judgment should be entered for the plaintiff on the complaint as against the defendant in the amount of $1,626.68 together with costs and interest from date of judgment.
2. Judgment should be entered for the plaintiff on the defendant's counter-claim.
Respectfully submitted, Peter W. Rotella Trial Referee